By the 11th section of the act of 1814, extending the charters of the banks of New Bern and Cape Fear, it is enacted that a tax of one per centum per annum shall be levied on all stock holden in each of the said banks, except on the stock holden by the State, which shall be paid to the Treasurer of the State, by the presidents or cashiers of said banks, on or before 1 October in each and every year. The meaning of the Legislature was that the stock of each individual stockholder should be annually charged with a tax of one per cent. In making up the accounts of the bank for the purpose of declaring dividends of profits among all the stock, the directors (225) took the tax, which was due only from individual stockholders, out of the aggregate amount of net profits which the bank had made, and then divided the remaining mass equally among all who held stock, as well the State as individuals. By this method of taking the accounts and dividing profits the State, on a share of her stock, received exactly the same amount of dividends as an individual stockholder received on a share of his stock. Whereas, if the intention of the Legislature had been regarded, the amount of dividend on a share of stock held by an individual would have been minus the amount of dividend on a share of State's stock to the difference of the tax which should have been taken out of the individual's dividend. At dividend day the accounts should have shown the net aggregate amount of the profits of the bank, exclusive of the individual stockholders' taxes; then the stock of the State should have had declared and set apart to it its dividend out of the aggregate mass. The remainder of the mass should then have had subtracted the tax on the stock due from all the individual stockholders, then the balance of that remainder should have been equally divided among the shares of stock of individual holders. I will simplify it, by supposing that A. and B. enter into copartnership, each putting in a capital stock of one hundred dollars, the profits to be divided every year. The stock of A. is subject to a tax of one per cent per annum; at the end of the year they have made net profits twenty dollars. The division of the aggregate profits would give B. ten dollars and A. ten dollars, out of which A. would pay his tax and leave him but nine dollars profit. But if the tax which *Page 182 
A. only owed was to be taken from the aggregate of profits, B. then would only receive nine dollars and fifty cents and A. would receive the same amount. By this mode of settling the accounts, B., whose stock was not subject to tax, would pay one-half of the tax which A. only owed. This mode of taking the accounts would certainly not be correct. The State and the private stockholders in this bank are partners in the institution upon the very same principles as the (226) case which I have supposed, with the difference only that the profits are declared semiannually instead of annually. Part of the profits of the stock of the State has been annually taken to aid in paying the tax due only from the individual stockholders. The annual dividends of the State's stock has been, in consequence thereof, less than it legally should have been. This information is filed to correct the mistakes thus made in the accounts, and surcharge the bank with the difference, which should be coming to the State, if the accounts at bank had been taken according to law.
The information states that the dividends have been declared from time to time, since the year 1814 up to the filing of the same, upon this erroneous principle; and that the individual stockholders have been paid more than their proper shares of dividends of the moneys which rightly belonged to the State. The information then proposes to obtain repayment by directing the bank to stop so much of the future dividends of profits of the individual stockholders, or to distrain the stock of individuals for that purpose.
If the stock had not been assignable, and the present individual holders were the same persons who had improperly received the money which rightfully belonged to the State, then the plan proposed would be right and just, as the persons who had improperly received would be before the Court. But the stock is assignable and changing owners daily, and there is no lien on the individual stock for this debt. Can it be right that the State, which is only a partner in this institution, should compel the present individual stockholders (new partners as it were) to pay the amount of the errors in account of antecedent profits, which had been paid by the agents of the bank and received by their assignors or the assignors of their assignors? It seems to me that the plan of redress proposed by the information is not agreeable to equity. If the stockholders who have received an excess of dividends at the expense of the dividends due on the State stock were before the Court, I would decree against them, and perhaps the agents of the bank (the directors) who committed the breach of trust in the illegal (227) distribution of the revenues of the institution, might be liable. However, on this I give no opinion as they are not before the Court. But it seems to me that the corporation, the interest in which *Page 183 
is jointly owned by the present individual holders of stock and the State, cannot be decreed to make good the loss, as stated in the information. Whether a court of Equity would enjoin the agents of the bank from making erroneous dividends, or whether a court of law would interfere by mandamus, the case now before the Court calls for no opinion. But as the case presents itself by the pleadings, I am of opinion that the demurrer ought to have been sustained.
PER CURIAM. Decree reversed, demurrer sustained, and the information dismissed.
Cited: Attorney-General v. Bank, 40 N.C. 73; Attorney-General v. Bank,57 N.C. 290.